# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER MICHAEL CARTY,  
    Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant.

Case No. 1:14-cv-380

Barrett, J.  
Litkovitz, M.J.

**REPORT AND  
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9) and the Commissioner's response in opposition (Doc. 19).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in December 2010, alleging disability since June 1, 2007,[1] due to personality disorder, emotional distress, gout, and migraines. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Vincent Misenti. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On January 11, 2013, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1]Plaintiff initially alleged a disability onset date of April 26, 2005, but amended the alleged onset date at the administrative hearing. *See* Tr. 35.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The [plaintiff] has not engaged in substantial gainful activity since June 1, 2007, the amended alleged onset date (Exhibits 5D; 6D) (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: gout, a personality disorder, and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can understand, remember, and carry out simple, routine, and repetitive tasks. The work should require only simple work related decisions and should not involve frequent changes. He is limited to occasional interaction with supervisors, co-workers, and the public.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

---

[2]Plaintiff's past relevant work was as a carpenter. (Tr. 20, 61, 251).

7. The [plaintiff] was born [in] . . . 1975 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 1, 2007, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 13-22).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[3]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 3,300 light, unskilled jobs in the regional economy, such as packing machine operator and power screw driver operator.  (Tr. 21, 65).

4

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746. *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Medical Record

The pertinent evidence is as follows. Plaintiff's United States Naval medical records show that in June of 1995, plaintiff was referred for mental health treatment due to reports of distress after learning his grandmother was ill. (Tr. 341-45). Plaintiff reported a history of physical abuse as a child and stated that he fantasized about torturing people responsible for his unhappiness, but he had no intent or plan. (Tr. 343-44). Plaintiff's Axis I diagnoses were rule out dysthymia and rule out alcohol abuse; his Axis II diagnoses were "schizoid traits" and "family problem." (Tr. 342). There is no further mental health evidence in the record from 1995 to 2011.

On January 31, 2011, plaintiff was evaluated by Randall Wenker, Psy.D., at the Veteran's

Administration (VA).  (Tr. 443-51).  Plaintiff's screenings for depression and posttraumatic

stress disorder (PTSD) were positive.  (Tr. 443).  Plaintiff reported a history of poor grades and

behavioral problems in school, including that in the tenth grade he brought a gun to his high

school "to shoot someone who had threatened [him]."  (Tr. 446-47).  Plaintiff further reported

that he entered the service at age 19 but was honorably discharged; plaintiff's service record

indicates that he was discharged secondary to personality disorder.  (Tr. 447).  Plaintiff reported

that he last worked in 2007 and he attributed his financial difficulties to the state of the economy;

he stated "he did not consider his mental health concerns to preclude stable competitive

employment."  (Tr. 448).  Plaintiff further reported that he is a loner; he is distrustful of others;

and he is easily agitated.  (*Id*.).  He reported that he previously shot his dog when he was

enraged.  (*Id*.).  Plaintiff stated he spends the majority of time watching television and sleeping,

but he also performs household chores and farm maintenance, he works on his truck, and he

looks for employment.  (*Id*.).  Dr. Wenker observed that plaintiff was appropriately groomed,

had excellent eye contact, and was articulate but used coarse language.  (Tr. 449).  Dr. Wenker

further observed that plaintiff was severely interpersonally intense, irritable and angry, and had a

congruent and blunted affect.  (*Id*.).  Dr. Wenker found no indication of psychosis and

diagnosed plaintiff with PTSD from childhood, opioid abuse, and antisocial personality disorder.

(Tr. 449-50).  Dr. Wenker assigned plaintiff a Global Assessment of Functioning ("GAF") score

of 55.[4]  (Tr. 450).

---

[4]A GAF score represents "the clinician's judgment of the individual's overall level of functioning."
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.
2000).  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,
and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger

Dr. Heiskell examined plaintiff on behalf of the state agency on February 9, 2011. (Tr. 453-57). Plaintiff reported that while he was in school, he had multiple suspensions, including a suspension for the incident when he brought a gun to school. (Tr. 454). Plaintiff stated that he resented supervisors who would give him too many directions and he would respond by not returning to those jobs. (*Id*.). Plaintiff further stated that most days he feels "like shit" and he reported a loss of interests lasting for up to two weeks at a time, where he does not want to shower and experiences a loss of libido. (Tr. 455). Plaintiff reported that he feels anxious and short of breath in crowds. (*Id*.). He stated that when he shops for food he goes in the middle of the night to avoid people. (Tr. 456). Regarding activities of daily living, plaintiff reported that he had been living in his vehicle but occasionally showered at his grandmother's residence. (*Id*.). Plaintiff stated that he spends most of the day sleeping or on his own in the woods or by the river. (*Id*.).

Dr. Heiskell observed that plaintiff related in an extremely tight, edgy manner; plaintiff was over-controlled and appeared to be trying to suppress anger. (Tr. 454-55). Plaintiff's speech was readily intelligible; he displayed no thought process difficulty; and he was alert and oriented. (*Id*.). On examination, plaintiff became frustrated attempting serial 7 subtractions; he recalled 5 digits forward and 4 digits in reverse (the latter with difficulty); and he recalled one of three words after a five minute delay. (*Id*.). Dr. Heiskell assigned plaintiff a GAF score of 50[5] and diagnosed him with social phobia; major depression, recurrent, upper moderate; and a

---

of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id*. at 34. Individuals with scores of 51-60 are classified as having "moderate" symptoms. *Id*. at 32.

[5]Individuals with GAF scores of 41-50 are classified as having serious symptoms or serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders at 32.

personality disorder. (*Id.*). Dr. Heiskell opined that plaintiff is moderately limited in his ability to understand and following instructions; unimpaired in his ability to maintain attention to perform simple, repetitive tasks; "upper" moderately impaired in his ability to relate to others, including fellow workers and supervisors; and markedly impaired in his ability to withstand the pressures associated with day-to-day work activities. (Tr. 457).

Dr. Heiskell also completed a Mental Functional Capacity Assessment form in March 2011 pursuant to a request from the Scioto County Department of Jobs and Family Services. (Tr. 459). Dr. Heiskell opined that plaintiff is markedly limited in his ability to carry out detailed instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (*Id.*). Dr. Heiskell further opined that plaintiff is moderately limited in his ability to understand and remember both very short and simple instructions and detailed instructions; carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ask simple questions or request assistance; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public

transportation. (*Id.*). Lastly, Dr. Heiskell opined that plaintiff was not significantly limited in his ability to make simple work-related decisions. (*Id.*).

State agency reviewing psychologist Bruce Goldsmith, Ph.D., reviewed the evidence on February 24, 2011. (Tr. 77-87). Dr. Goldsmith determined that there was insufficient evidence in the record for him to opine as to whether plaintiff met the criteria for Listing 12.06. (Tr. 83). However, with respect to Listing 12.08, Dr. Goldsmith found that plaintiff had moderate restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (*Id.*). Dr. Goldsmith opined that plaintiff is moderately limited in his ability to: perform activities within a schedule and be punctual within customary tolerance; sustain an ordinary routine without special supervision; work in proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticisms from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and to adhere to the basic standards of neatness and cleanliness; respond appropriately to changes in the work place; and travel in unfamiliar places or use public transportation. (Tr. 85-86). Dr. Goldsmith also opined that Dr. Heiskell overestimated the severity of plaintiff's restrictions/limitations, noting that his opinion was based on only a snapshot of plaintiff's functioning. (Tr. 87). Dr. Goldsmith concluded that plaintiff would require work that is independent with only occasional intermitted interactions with coworkers

9

without fast pace or strict production standards and with infrequent changes. (Tr. 86). On January 3, 2012, Dr. Goldsmith's opinion was affirmed by state agency reviewing psychologist, Bonnie Katz, Ph.D. (Tr. 113-18).

Plaintiff began receiving mental health treatment at Shawnee Mental Health Center (Shawnee) and underwent an initial evaluation on September 22, 2011. (Tr. 483-87). On examination, plaintiff's grooming was observed as being within normal limits; his affect was constricted; his mood was depressed; and his speech and activity were documented as normal. (Tr. 484). Plaintiff was also observed to have a mistrustful demeanor and avoidant eye contact. (*Id.*). The intake social worker noted that plaintiff's attention, concentration, and memory were impaired. (*Id.*). The social worker felt plaintiff needed a psychiatric evaluation for possible medication. (Tr. 487).

On October 25, 2011, plaintiff was evaluated by David Helm, M.D., who would become plaintiff's treating psychiatrist at Shawnee. Plaintiff told Dr. Helm about his abusive childhood and military experience. Plaintiff further reported that he was being evicted by his mother and had been out of work for several years. Plaintiff reported that he is uncomfortable socially and that people are uncomfortable around him and he stated that he is not employable. Dr. Helm noted, "One can feel his intensity, and he seems like he is ready to blow." Dr. Helm observed plaintiff's mood as angry and his affect as exaggerated. Dr. Helm opined that plaintiff's insight and judgment were poor. Plaintiff was diagnosed with a mood disorder and PTSD and assigned a GAF score of 45. Plaintiff was prescribed Zyprexa to help "mitigate intensity and provide intervention for his flood of psychosocial stressors." (Tr. 478-79).

Treatment notes from November 2011 include plaintiff's reports that he had not taken the prescribed medication because he learned that it was for schizophrenia and he did not self-identify as schizophrenic.   Plaintiff specifically stated that he was "not a threat to [himself] or others, and [he does] not need a padded room."   Plaintiff was advised as to the indications for the medication and encouraged to take it as prescribed.   (Tr. 482).   January 2012 treatment notes indicate that plaintiff obtained public housing assistance and that plaintiff was prescribed Xanax to help with his anger levels.   (Tr. 480-81).

On January 31, 2012, Dr. Helm opined that plaintiff had marked limitations in his ability to understand and remember and carry out both simple and complex instructions and make judgments on simple and complex work-related decisions.   Dr. Helm further opined that plaintiff had extreme limitations in his ability to interact appropriately with the public, supervisors, and co-workers and respond appropriately to usual work situations and to changes in a routine work setting.   (Tr. 475-77).

In February 2012, plaintiff reported that the Xanax had helped reduce his anxiety.   (Tr. 541).   April 2012 treatment notes indicate that plaintiff was unhappy with his current neighborhood and was aggravated; Dr. Helm suggested that plaintiff engage in behavioral therapy in addition to medication.   (Tr. 540).   Plaintiff continued to report improvement with his anger with Xanax in May 2012.   (Tr. 539).   On July 3, 2012, Dr. Helm noted that plaintiff was stabilizing on his current regime.   (Tr. 538).   September 2012 treatment notes indicate that plaintiff was not in therapy and refused to take medications recommended by Dr. Helm; Dr. Helm recommended that plaintiff start Seroquel.   (Tr. 566).

11

Dr. Helm completed a second Medical Source Statement in September 2012 wherein he concluded that plaintiff had no limitation in understanding, remembering, and carrying out simple instructions; moderate limitation in his ability to understand and remember complex instructions; marked limitations in his ability to carry out complex instructions; and marked limitation in his ability to make judgments on complex work-related decisions.   Dr. Helm further determined that plaintiff had moderate limitation in his abilities to respond appropriately to usual work situations and to changes in a routine work setting and marked limitation in his abilities to interact with the public, supervisors, and co-workers.   Dr. Helm concluded that plaintiff is able to take care of his activities of daily living but he doubted plaintiff could perform work on a competitive level.   (Tr. 543-45).

In October 2012, plaintiff reported no effects from the Seroquel but Dr. Helm observed that plaintiff was "calm and deliberate" and "seems to be more comfortable with himself. . . ." (Tr. 565).   On January 8, 2013, plaintiff reported that he moved and "feels ok."   (Tr. 563).   Dr. Helm noted that the medications seemed helpful overall.   (Tr. 564).   In May 2013, plaintiff reported that he discontinued the Seroquel and that he was having ongoing thoughts of hurting others.   (Tr. 560).   Clinical observations included findings that plaintiff had an appropriate appearance; he exhibited no signs of psychosis or mania; his behavior was agitated and mood was irritable; his memory was intact; his attention was gained and he was cooperative; and he had good impulse control, insight, and judgment.   (Tr. 561).[6]

---

[6]Plaintiff does not assert that the ALJ erred in assessing the medical evidence of record with respect to his physical impairments.   Accordingly, the Court declines to summarize this evidence.

12

### E.  Specific Errors

Plaintiff raises the following assignments of error on appeal: (1) the ALJ erred at Step

Two of the sequential evaluation process by failing to find that plaintiff's personality disorder

was a severe impairment; (2) the ALJ erred in weighing the mental health opinion evidence of

record; (3) the ALJ erred at Step Three of the sequential evaluation process in finding that

plaintiff did not meet or equal the requirements of Listings 12.04, 12.06 or 12.08; (4) the ALJ

erred in formulating plaintiff's residual functional capacity (RFC); and (5) the ALJ erred in

discounting plaintiff's credibility.[7]  (Doc. 9).

### 1. Whether the ALJ erred at Step Two of the sequential evaluation process.

Plaintiff claims "[t]he ALJ violated [S]ocial [S]ecurity regulations and policy by failing

to find that [his] personality disorder was a severe impairment at [Step Two of the sequential

evaluation process]" and maintains that "a remand for additional hearing would be warranted

pursuant to [S]entence [S]ix of [§] 405(g)."  (Doc. 9 at 10-11, 14).  Yet, as stated *supra*, the

ALJ found that "[plaintiff] has the following severe impairments: gout, *a personality disorder*,

and an anxiety disorder. . . ."  (Tr. 13) (emphasis added).  Plaintiff's contrary assertion appears

to be based on a misreading of the ALJ's decision.  Accordingly, plaintiff's first assignment of

error should be overruled.

### 2. Whether the ALJ erred in weighing the mental health opinions of record.

The ALJ gave "little weight" to the September 2012 opinion of Dr. Helm, plaintiff's

treating psychiatrist, because he determined that it was largely based on plaintiff's subjective

reports; it was not supported by treatment records showing that plaintiff was stabilizing on his

---

[7]For clarity's sake, plaintiff's assignments of error will be addressed in this enumerated order and not in the order they are provided in his Statement of Errors.

13

medication and treatment plan; and it was inconsistent with plaintiff's minimal medication and psychiatric treatment. (Tr. 19-20, citing Tr. 538, 541). The ALJ gave "greater weight" to Dr. Heiskell's report-based opinion, which was rendered in February 2011 in connection with his consultative examination of plaintiff, than to Dr. Helm's September 2012 opinion.[8] (Tr. 19). Yet, the ALJ gave "little weight" to Dr. Heiskell's form-based opinion that was completed in March 2011 pursuant to a request from the Scioto County Department of Jobs and Family Services, finding that it "appears to have been based upon [plaintiff's] subjective complaints and is not supported by any objective clinical findings or testing." (Tr. 19). The ALJ further noted that at the time Dr. Heiskell's opinions were rendered, plaintiff was not in mental health treatment and was not taking any medication for his mental health impairments, "yet was capable of activities of daily living." (*Id*.). With respect to the non-examining, state agency psychologists, the ALJ did not state what weight he gave their opinions, but merely stated that he agreed with their conclusions that plaintiff has no more than moderate limitation in social interaction and concentration, persistence, or pace and disagreed with their opinions that plaintiff has moderate difficulties in activities of daily living. (Tr. 20).

Plaintiff asserts the ALJ erred in weighing the above mental health opinion evidence. He contends the ALJ failed to weigh or otherwise address Dr. Helm's January 2012 opinion and failed to adequately explain his decision to give "little weight" to Dr. Helm's September 2012 opinion. Regarding Dr. Heiskell, the consultative examining psychologist, plaintiff asserts the ALJ's decision to give different weight to the doctor's two opinions lacks substantial support as both were based on and supported by the same, single examination. Plaintiff further argues that

---

[8]Notably, the ALJ did not specify how much weight he was affording Dr. Heiskell's report-based opinion but simply stated that it was given "greater weight" than Dr. Helm's September 2012 opinion, which was afforded

14

the ALJ erred in his assessment of the state agency psychologists' opinions as their findings were based on incomplete reviews of the record.   Lastly, plaintiff maintains that the ALJ did not comply the Social Security regulations and Sixth Circuit precedent in assessing the above-identified opinion evidence.[9]   (Doc. 9).   For the following reasons, plaintiff's arguments are well-taken.

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence."   *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).   "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b."   *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).   This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments."   *Id*. (citing 20 C.F.R. § 404.1527(a)(2)).

The applicable regulations lay out the three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source.   20 CFR §§ 404.1502, 416.902.   It is well-established that the findings and opinions of treating physicians

---

"little weight."  *See* Tr. 19.
    [9]Plaintiff further argues "[t]he ALJ failed to mention one of the treating doctors in the record. . . ."   (Doc. 9 at 14).   However, plaintiff does not identify which doctor the ALJ failed to mention and review of the record reveals that the only treating doctor of relevance is Dr. Helm, who was clearly mentioned in the ALJ's decision.   Plaintiff's failure to present any further developed argument on this issue amounts to a waiver.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other

16

factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p, 1996 WL 374188 (1996)). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 544 (quoting *Wilson*, 378 F.3d at 544).

"With regard to nontreating, but examining, sources, the agency will simply generally give more weight to the opinion of a source who has examined the claimant than to the opinion of a source who has not examined him." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1)) (internal citations omitted). However, ALJs are still required to evaluate the opinions of both examining and reviewing sources under the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *See* Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2 (1996) ("the rules for considering medical and other opinions of treating sources . . . also apply when we consider the medical opinions of nonexamining sources, including State agency medical and psychological consultants and other program physicians and psychologists).

17

Upon review of the ALJ's decision and the evidence of record as a whole, the undersigned finds that the ALJ committed reversible error in weighing the mental health opinion evidence of record. With respect to Dr. Helm, the ALJ's decision does not acknowledge Dr. Helm's status as plaintiff's treating psychiatrist. Further, the ALJ made no reference in his decision to the applicable Social Security regulations that dictate how treating source opinion evidence is to be considered. It is therefore unclear whether the ALJ appropriately considered Dr. Helm's September 2012 opinion as treating source opinion evidence. The ALJ also failed to conduct the requisite inquiry under 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) with respect to Dr. Helm's September 2012 opinion. The ALJ did not explain whether it was entitled to controlling weight,[10] nor did he analyze the regulatory factors of length, nature, and extent of the treatment relationship, supportability, consistency, and specialization in assessing Dr. Helm's September 2012 opinion. *See* Tr. 19-20. In the absence of any indication that the ALJ considered Dr. Helm to be a treating source or applied the treating physician rule in weighing this evidence, this matter should be reversed and remanded for proper consideration of the treating source evidence.

The ALJ further erred by making no mention whatsoever in his decision of Dr. Helm's January 2012 opinion (Tr. 475-77) wherein Dr. Helm opined that plaintiff has marked to extreme limitations in all functional areas.[11] When an ALJ fails to mention relevant evidence in his decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Sec'y of H.H.S.*, No. 86–5875, 1988 WL 34109, at * 2 (6th Cir. Apr.

---

[10]Clearly, the ALJ did not find it was entitled to controlling weight as he afforded it only "little weight." (Tr. 19). However, the ALJ's failure to explain his decision-making process within the context of the Social Security regulations pertaining to treating source opinions makes meaningful review of his decision impossible.

[11]Although the Commissioner acknowledges plaintiff's assertion regarding Dr. Helm's January 2012

18, 1988) (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). *See also* 20 C.F.R. §§

404.1527(c) and 416.927(c) (the ALJ was obliged to consider, discuss, and weigh both of Dr.

Helm's opinions). Thus, not only has the ALJ failed to acknowledge Dr. Helm's status as a

treating source, he totally omitted from his decision any discussion related to Dr. Helm's January

2012 opinion. The Court is therefore unable to meaningfully review the ALJ's decision in this

regard. *See Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v.

Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)) ("It is more than merely 'helpful' for the ALJ to

articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely

essential for meaningful appellate review."). Further, the ALJ committed an error of law when

he failed to comply with his duty to weigh Dr. Helm's treating source opinion in accordance with

20 C.F.R. §§ 404.1527(c) and 416.927(c). *Blakley*, 581 F.3d at 407. Remand is therefore

required to allow the ALJ to fully consider the opinion evidence from Dr. Helm so that the Court

may meaningfully review his decision. *See Bowen*, 478 F.3d at 750.

The ALJ also erred in weighing the opinions of consultative examining psychologist Dr.

Heiskell. First, although the ALJ gave "greater weight"[12] to Dr. Heiskell's opinion as provided

in the report generated in connection with his examination, the ALJ failed to address Dr.

Heiskell's conclusion therein that plaintiff is markedly limited in his ability "to withstand the

stress and pressures associated with day-to-day work activity" due to his mental health

impairments. *See* Tr. 457. Dr. Heiskell's finding is consistent with Dr. Helm's conclusion that

---

opinion, she does not put forth any argument stating that the ALJ's failure to discuss a treating psychiatrist's opinion evidence is not reversible error. *See* Doc. 19 at 5-6.

[12]Notably, although the ALJ gave this opinion "greater weight" than Dr. Helm's September 2012 opinion, the ALJ never indicated precisely how much weight it was given. (Tr. 19). This vagueness is troubling in this case because, as discussed further *infra*, it is also unclear what weight the ALJ afforded to the opinions of the state agency reviewing psychologists. The ALJ's failure to provide this additional and necessary clarity makes it extraordinarily difficult, if not impossible, to follow his rationale.

although plaintiff "is able to take care of his activities of daily living, [Dr. Helm] doubt[ed] that

[plaintiff] could perform work on a competitive level." (Tr. 544). The ALJ's decision to give

"greater weight" to Dr. Heiskell's opinion while failing to acknowledge this finding – which

appears to support the conclusion that plaintiff is precluded from employment – or otherwise

resolve this conflict demonstrates a facial inconsistency requiring remand. *See Richardson*, 402

U.S. at 399. Second, the ALJ's decision to give less weight to Dr. Heiskell's March 2011

form-based opinion (Tr. 457) than to his February 2011 report-based opinion (Tr. 453-58) lacks

substantial support in the record. The ALJ stated that he gave the form-based opinion "little

weight" because it "is not supported by any objective clinical findings or testing." (Tr. 19). It

is obvious, however, that both of Dr. Heiskell's opinions were based on his singular February

2011 examination of plaintiff and the clinical and objective findings made thereto. The ALJ's

stated rationale for giving less weight to Dr. Heiskell's March 2011 opinion is therefore without

substantial support in the record. Third, the ALJ erroneously failed to apply the regulatory

factors in weighing the evidence from Dr. Heiskell. Despite Dr. Heiskell's status as a one-time

examining source, the ALJ was nevertheless required to evaluate his opinions under the

regulatory factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(c), such as supportability

and consistency. Indeed, Social Security Ruling 96-6p clearly provides that the ALJ was to

consider "the supportability of the opinion[s] [and] the consistency of the opinion[s] with the

record as a whole, including any other medical opinions, and any explanation for the opinion

provided by [Dr. Heiskell]." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. The ALJ erred by

failing to engage in this analysis in weighing the evidence from Dr. Heiskell such that remand is

warranted. *See Bowen*, 478 F.3d at 746 ("a decision of the Commissioner will not be upheld

where the [Social Security Administration] fails to follow its own regulations and where that
error prejudices a claimant on the merits. . . .").

The ALJ likewise erred in weighing the opinions of Drs. Goldsmith and Katz, the state
agency reviewing psychologists. The ALJ evaluated this evidence as follows:

> The [ALJ] also does not agree with the State Agency assessment that [plaintiff]
> has moderate difficulties in activities of daily living from a mental standpoint. At
> the hearing, [plaintiff] testified that when he does not have [gout] flares, he is
> capable of significant activities of daily living; however, these chores are
> completed by his live-in girlfriend. In any case, [plaintiff] is capable of caring for
> himself such as his personal care, he can prepare his own microwave meals, drive,
> and shop, but apparently chooses to leave the household chores to his girlfriend.
> The [ALJ] agrees that [plaintiff] is not more than moderately limited in social
> interaction and in concentration, persistence, or pace. According to [plaintiff]'s
> testimony, he has sufficient self-control to control his temper so that he will not
> lose his housing benefits.

(Tr. 20). The above analysis is insufficient for purposes of weighing mental health opinion
evidence.

At the outset, the undersigned notes that the ALJ failed to specify how much weight he
gave to the state agency reviewing psychologists' opinions. The ALJ simply stated that he
"agrees" with their conclusion that plaintiff has no more than moderate limitation in social
functioning and concentration, persistence, or pace, and that he "disagrees" with their finding that
plaintiff has moderate limitations in activities of daily living. An ALJ's failure to provide an
explicit weight value to a medical opinion does not amount to reversible error where the ALJ's
decision and analysis of the evidence permits the Court "to conduct a meaningful review and to
determine the weight provided to the opinion." *Isaacs v. Colvin*, No. 1:12-cv-777, 2013 WL
6230352, at *7 (S.D. Ohio Dec. 2, 2013) (Report and Recommendation), *adopted*, 2014 WL
1271030 (S.D. Ohio Mar. 27, 2014) (citing *Rogers*, 486 F.3d at 242-43; *Nelson v. Comm'r of*

21

*Soc. Sec.*, F. App'x 462 (6th Cir. 2006)).   Here, however, the Court is not able to meaningfully

review the ALJ's decision due to the various errors identified above, including his failure to

address Dr. Helm's January 2012 opinion and pertinent portions of Dr. Heiskell opinions and to

acknowledge Dr. Helm as a treating source.   Even if the Court construes the ALJ's "agreement"

with the state agency sources as a grant of "great" or "significant" weight to their conclusions

regarding plaintiff's limitations in social functioning and concentration, persistence, or pace, the

ALJ's failure to weigh these doctors' opinions under the applicable regulatory factors, such as

consistency and supportability, warrants a remand of his decision.   *See* Soc. Sec. Rul. 96-6p,

1996 WL 374180, at *2.

   For the above reasons, plaintiff's second assignment of error should be sustained and this

matter should be remanded with instructions to the ALJ to reweigh the opinion evidence of

record consistent with this opinion.

   3. Whether the ALJ erred in finding that plaintiff did not meet or medically equal a listed
      impairment.

   For his third assignment of error, plaintiff asserts the ALJ erred in failing to find that he

meets or medically equals Listings 12.04, 12.06, or 12.08.

   The Court need not address whether the ALJ erred by failing to find that plaintiff meets

the above listings.   In support of his contention that the ALJ erred at Step Three of the sequential

evaluation process, plaintiff relies primarily on the mental health opinion evidence of record.

The Court has determined that the ALJ erred by failing to address or engage in a proper weighing

analysis of this opinion evidence.   Accordingly, because plaintiff's Listings argument depends

on the mental health opinion evidence, the ALJ should reevaluate whether plaintiff's mental

impairments meet Listings 12.04, 12.06, or 12.08 after reweighing the opinion evidence on remand.

    4. <u>Whether the ALJ erred in formulating plaintiff's RFC</u>.

The ALJ determined that despite his severe mental health impairments, plaintiff retained the RFC to perform a limited range of light work with the limitations that "he can understand, remember, and carry out simple, routine, and repetitive tasks" and the "work should require only simple work related decisions and should not involve frequent changes." (Tr. 16). Plaintiff argues that this RFC formulation fails to account for plaintiff's established limitations in concentration, persistence, or pace. (Doc. 9 at 12, ¶ 23). Plaintiff's argument is well-taken.

The pertinent opinion evidence in the record is unanimous inasmuch as plaintiff is deemed to have at least "moderate" limitations in concentration, persistence, or pace. *See* Tr. 83, 85-86 (Dr. Goldsmith opined that plaintiff had moderate limitations in concentration, persistence or pace); Tr. 114, 116-17 (Dr. Katz also found that plaintiff had moderate limitations in concentration, persistence or pace); Tr. 457 (Dr. Heiskell found that plaintiff had moderate limitations in his ability to understand and follow instructions as evidenced by concentration errors and uneven pace when doing serial seven subtractions); Tr. 459 (Dr. Heiskell opined that plaintiff had moderate to marked limitations in concentration and persistence).[13] Notably, both Dr. Goldsmith and Dr. Katz determined that plaintiff "would not be able to perform tasks with strict time or production demands." (Tr. 86, 117).

The ALJ agreed that plaintiff was moderately limited in concentration, persistence, or pace. (Tr. 20). However, his RFC formulation limiting plaintiff to simple, repetitive work does

---

[13]The opinion evidence from Dr. Helm does not specify any limitations with respect to plaintiff's concentration, persistence or pace. *See* Tr. 475-77, 543-45.

not adequately accommodate plaintiff's moderate limitations in concentration, persistence or

pace. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010). In *Ealy*, the

Sixth Circuit held that where the medical opinion evidence establishes that a Social Security

claimant has specific pace, speed, and concentration limitations, the ALJ must include such

speed- and pace-based restrictions in his RFC formulation and in the hypothetical questions

posed to a VE. *See Ealy*, 594 F.3d at 516-17. *See also Edwards v. Barnhart,* 383 F. Supp.2d

920, 930-31 (E.D. Mich. 2005) (the ALJ's hypothetical question to the VE precluding all but

"simple, routine, unskilled work" failed to account for moderate limitations in persistence and

pace). This Court has likewise recognized that an ALJ's RFC formulation for simple, routine

jobs fails to account for moderate deficits in attention, concentration, persistence, and pace. *See*

*Ball v. Comm'r of Soc. Sec.*, No. 1:09-cv-684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011)

(recognizing Sixth Circuit authority that hypothetical omitting critical speed-based and

pace-based restrictions failed to properly and fully describe the plaintiff's RFC limitations);

*Herriman v. Apfel*, No. 99-cv-73489, 2000 WL 246598, at *2-3 (E.D. Mich. Feb. 11, 2000)

(hypothetical limiting the plaintiff to simple unskilled work with limited contact with the public

constituted error because it failed to take into account the plaintiff's deficiencies in

concentration); *Falconi v. Comm'r of Soc. Sec.*, No. 1:08-cv-622, 2009 WL 3790176, at *10

(S.D. Ohio Nov. 11, 2009) (limitations that the plaintiff was able to "perform simple, routine,

repetitious work in a low stress environment with no strict production requirement" did not

adequately address the limitation of "ability to complete a normal workday, to maintain attention

and concentration for extended periods, and to work within a schedule and maintain regular

attendance."). The ALJ's RFC formulation failed to accurately reflect plaintiff's mental

24

limitations as it did not account for his persistence and pace deficits.[14]   Accordingly, plaintiff's

fourth assignment of error should be sustained.

     5. <u>Whether the ALJ erred in discounting plaintiff's credibility</u>.

     For his final assignment of error, plaintiff contends the ALJ erred by discounting his

credibility.   Plaintiff argues that the ALJ's credibility finding is "not supported by the substantial

weight of the evidence . . . and contain[s] outright errors."   (Doc. 9 at 13, ¶ 24).   Plaintiff

specifies that his testimony that he has suicidal and homicidal thoughts and that he has lost jobs

because of his temper is supported by Naval medical records recommending that plaintiff's

access to weapons be severely restricted.   (*Id*, citing Tr. 377).   Plaintiff also asserts the ALJ's

credibility finding based on a lack of mental health treatment is subject to reversal because the

ALJ did not account for plaintiff's reports that he was unable to afford treatment.   (*Id*.).

     It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant.   *Rogers*, 486 F.3d at 247 (citations omitted).   In light

of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's

credibility finding is entitled to deference and should not be discarded lightly.   *Buxton v. Halter*,

246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538.   "If an ALJ rejects a claimant's

testimony as incredible, he must clearly state his reasons for doing so."   *Felisky v. Bowen*, 35

F.3d 1027, 1036 (6th Cir. 1994).   The ALJ's articulation of reasons for crediting or rejecting a

claimant's testimony must be explicit and "is absolutely essential for meaningful appellate

---

[14]The Commissioner argues that the ALJ's RFC formulation here was sufficient because "the ALJ reasonably relied on Dr. Heiskell's and state agency psychologist Dr. Katz's opinions that [p]laintiff could do simple, repetitive tasks without any restriction to a specific work pace."   (Doc. 19 at 11).   The Commissioner's argument misstates the record.   Dr. Katz clearly opined that plaintiff is capable of performing "simple to somewhat complex tasks *without strict time or production demands*."   (Tr. 117) (emphasis added).   In consideration of Dr. Katz's unequivocal speed- and pace-based restrictions, the ALJ's RFC formulation is deficient.

review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers*, 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248.

Here, the ALJ determined that plaintiff's subjective complaints of employment-preclusive gout pain and mental problems were not fully credible because: (1) there was no evidence in the record of inpatient hospitalizations for gout; (2) plaintiff's gout flares are infrequent despite there being no evidence that he was on a low purine diet and he was capable of performing activities of daily living; (3) plaintiff is able to control his thoughts and actions; (4) plaintiff is maintained on minimal psychotic medications; and (5) plaintiff regularly treats with his psychiatrist without evidence of emergency room or inpatient hospitalizations. (Tr. 20). For the following reasons, the undersigned finds that the ALJ's credibility determination is supported by substantial evidence.

First, to the extent plaintiff relies on Naval medical records to support his claims that he cannot work due to his temper, this evidence from July 1995 predates plaintiff's alleged onset

26

disability date by nearly a decade and its relevance is therefore unclear.  *See* Tr. 376-77.

Moreover, these records include notes that plaintiff did not have a severe mental disease and that

no psychiatric follow-up was indicated.  (Tr. 377).  Taken as a whole, this evidence does not

support plaintiff's claims that he cannot work due to his temper.

Second, plaintiff's claim that the ALJ based his credibility determination on a lack of

psychiatric treatment is inaccurate.  The ALJ gave five reasons, enumerated above, for

discounting plaintiff's credibility and lack of mental health treatment was not one of them.

Accordingly, the ALJ did not err by failing to take into account plaintiff's financial situation as

lack of treatment was not a basis for his credibility determination.

Third, the ALJ's stated reasons for discounting plaintiff's credibility are substantially

supported by the evidence of record.  Plaintiff does not identify any records showing that he

received inpatient hospitalizations due to gout that would contradict the ALJ's conclusion and

plaintiff's testimony at the ALJ hearing supports the ALJ's finding that he is capable of

performing activities of daily living despite his gout.  *See* Tr. 49-51 (plaintiff testified that he

can heat food in the microwave, wash dishes, vacuum, mop, and do laundry).  Plaintiff further

testified that although he contemplates physically harming others, including prior coworkers, that

he has never let it escalate to the point of being physical because he does not want to go to jail.

(Tr. 39).  This testimony supports the ALJ's conclusion that plaintiff is able to control his

thoughts and actions.  Similarly, the ALJ's finding that plaintiff is maintained on minimal

prescription medications and regular psychiatric appointments is supported by the Shawnee

treatment notes.  *See* Tr. 538 (Dr. Helm noted in July 2012 that plaintiff was stabilizing on his

current regime); Tr. 539, 541 (plaintiff reported relief from anxiety and anger with Xanax in

February and April 2012); Tr. 565 (plaintiff was observed as being calm, deliberate, and more

comfortable with himself in October 2012); Tr. 563-64 (plaintiff reported feeling "ok" in January

2013 and Dr. Helm noted that the medication appeared to be helping plaintiff).

The ALJ's decision to discount plaintiff's credibility is substantially supported by the

medical evidence of record and plaintiff's testimony at the ALJ hearing. Accordingly, plaintiff's

final assignment of error should be overruled.

**III. Conclusion**

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for

further proceedings consistent with this Order. All essential factual issues have not been

resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to

benefits. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). On remand, the ALJ

should, consistent with this opinion, evaluate the mental health opinion evidence of record in

accordance with Sixth Circuit case law and the Social Security regulations. The ALJ should

also reformulate plaintiff's RFC to account for his limitations in concentration, persistence and

pace and as necessary to the extent his reweighing of the mental health opinion evidence of

record impacts his findings on plaintiff's RFC.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _4/6/2015_            _Karen L. Litkovitz_
                                                          Karen L. Litkovitz
                                                          United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHRISTOPHER MICHAEL CARTY,         Case No. 1:14-cv-380
    Plaintiff,

                        Barrett, J.
    vs.                            Litkovitz, M.J.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

29